## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**IGNACIO LOERA,**

     **Petitioner,**

**v.**                                                                       **No. 12-cv-0648 WJ/SMV**

**JAMES JANECKA and**
**ATT'Y GEN. OF THE STATE OF N.M.,**

     **Respondents.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

THIS MATTER is before me[1] on Petitioner's Petition [Doc. 1] and Brief in Support of 28 U.S.C. § 2254 Petition [Doc. 2] (collectively, "Petition"), filed June 13, 2012, and Respondents' Motion to Dismiss [Doc. 12] and Memorandum in Support of Motion to Dismiss [Doc. 13] (collectively, "Motion to Dismiss"), filed August 20, 2012.[2] Petitioner filed his Response to the Motion to Dismiss [Doc. 14] ("Response") on September 10, 2012. Respondents filed their Reply [Doc. 15] ("Reply") on September 19, 2012. Having read the Petition, the Motion to Dismiss, the briefs, and the applicable caselaw, I find that the Motion to Dismiss is well-taken and will recommend that it be granted.

Petitioner asks the Court to overturn his state-court convictions for false imprisonment and criminal sexual penetration of a 15-year-old minor. Petition [Doc. 1] at 11–14; [Doc. 2] at 4,

---

[1] On June 18, 2012, the Honorable William P. Johnson, United States District Judge, referred this matter to me for proposed findings and a recommended disposition. Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, and Prisoner Cases [Doc. 4].

[2] Petitioner is incarcerated, proceeding *in forma pauperis*, and appearing pro se. *See* Respondents' Answer to Petition for Writ of Habeas Corpus . . . [Doc. 11] at 2 (incarcerated); Order Granting Application to Proceed *In Forma Pauperis* [Doc. 5] (proceeding in forma pauperis); Petition [Doc. 1] at 19.

9–12.  He raises two grounds in support of his Petition.  The first is based on a claim of ineffective assistance of counsel ("IAC").  Petition [Doc. 1] at 11–12; [Doc. 2] at 4, 9–10.  At his trial, Petitioner testified that when he sexually assaulted the victim he believed her to be 17 years old rather than 15.  Petition [Doc. 2] at 3–4.  In closing argument, the prosecutor told the jury that Petitioner's mistaken belief as to the victim's age was not a defense to the crime of criminal sexual penetration ("CSP").  *Id.* at 4.  Petitioner argues that this was a misstatement of the law, and that his trial attorney was constitutionally ineffective when he failed to object to the prosecutor's comment.  *Id.*

Petitioner's second ground for habeas relief is based on the Double Jeopardy Clause of the Fifth Amendment.  He argues that because he did not restrain the victim's freedom of movement for any longer than it took for him to assault her, his conduct was "unitary," such that his convictions for both false imprisonment and criminal sexual penetration resulted in multiple punishments for the same offense in violation of the prohibition against double jeopardy. Petition [Doc. 1] at 13–14; [Doc. 2] at 10–12.

Petitioner raised these claims in an appeal to the Court of Appeals for the State of New Mexico ("Court of Appeals").  Appeal From Twelfth Judicial District . . . [Doc. 11-1] at 17.  The Court of Appeals rejected both claims and affirmed his convictions.  Memorandum Opinion [of the Court of Appeals of New Mexico] [Doc. 11-1] ("Memorandum Opinion") at 70.  Petitioner argues that he is entitled to habeas relief because the Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  *See generally* Petition [Doc. 1]; [Doc. 2].  I disagree.  I find that the decision of the Court of Appeals was entirely consistent with controlling federal law

regarding ineffective assistance of counsel.  I also find that the Court of Appeals correctly applied controlling state law regarding the Double Jeopardy Clause.  Therefore, being fully advised, I recommend that the Motion to Dismiss be granted and the entire Petition be dismissed with prejudice.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

The events that led to Petitioner's arrest and conviction began on April 25, 2009. Memorandum Opinion [Doc. 11-1] at 62.[4]  Petitioner and the victim, K.E., had plans to go to a party.  Petition [Doc. 2] at 2.  When those plans fell through, Petitioner bought a bottle of vodka, which he shared with K.E.  *Id.* at 3.  K.E. was 15 years old at the time.  Memorandum Opinion [Doc. 11-1] at 63.  Later that night Petitioner called K.E.'s brother and told him that K.E. was drunk, and because he did not want to take her home in that condition, he planned to keep her overnight at his house.  *Id.* at 62–63.  The state presented evidence at trial that Petitioner had sexual intercourse with K.E. multiple times over the course of the night while he knew that she was drunk, unaware, and incapable of resisting.  *Id.* at 64.

K.E. did not remember the sexual assaults, apparently because she was passed out from the alcohol Petitioner had provided.  *Id.* at 63.  She testified that she remembered drinking vodka with the Petitioner on the night of the 25th and waking up on the morning of the 26th in Petitioner's home, wearing clothes that did not belong to her, but she could not recall anything in

---

[3] The controlling issues in the Petition are susceptible to resolution based upon the materials already before the Court.  Thus, an evidentiary hearing is unnecessary.  *See Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (noting that evidentiary hearing not required where record is sufficient to rule).

[4] The Court of Appeals' opinion lists the date of the underlying assault as August 25, 2009, whereas the Jury Instructions from the underlying trial list that the date of the assault as *April* 25, 2009.  *Compare* Memorandum Opinion [Doc. 11-1] at 62, *with* Jury Instructions 7, 10, 11, and 13 [Doc. 11-2] at 34, 37, 38, and 40.  I adopt April 25, 2009, as the date of the underlying assault.  *See* 28 U.S.C. § 2254(e)(1) (state court findings of fact are "presumed to be correct").  However, this decision is in no way determinative of Petitioner's claims at bar.

between. *Id.* at 63.   However, she testified that Petitioner told her that they had had sexual intercourse five times in five hours during the night.   *Id.*   K.E. also testified that Petitioner told her that there were points throughout the night when she was fighting off Petitioner, "so he hit her."   *Id.* at 63.   At least once during the night, K.E. punched Petitioner in the eye, at which point Petitioner "head butted her."   *Id.*

K.E.'s mother testified that when K.E. returned home on the morning of April 26, K.E. was wearing a t-shirt that did not belong to her and had bruises on her face.   *Id.* at 62.   A few days later, K.E. told her that Petitioner had raped her.   *Id.* at 63.

Petitioner did not deny having sex with K.E. but maintained that the sex was consensual. Petition [Doc. 2] at 3.   He also testified that he mistakenly believed that K.E. was 17 years old rather than 15.   *Id.*; Memorandum Opinion [Doc. 11-1] at 65.[5]

Petitioner was charged with one count of kidnapping and one count of CSP.   *See* Jury Instructions 7–10 [Doc. 11-2] at 34–37.   The kidnapping count included the lesser offense of false imprisonment, a fourth degree felony in violation of NMSA 1978 § 30-4-3:

> **30-4-3.   False imprisonment.**   False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.   Whoever commits false imprisonment is guilty of a fourth degree felony.

The CSP count included (a) the offense of CSP of a child between 13 to 18 years old by use of force or coercion, a second degree felony in violation of NMSA 1978 § 30-9-11(E)(1)

---

[5] K.E.'s cousin testified that K.E. had, in fact, told  Petitioner that she was 17 years old Petition [Doc. 2] at 3; Memorandum Opinion [Doc. 11-1] at 65.

("CSP (E)(1)"),[6] and (b) the lesser included offense of CSP of a child 13 to 16 years old without force or coercion, a fourth degree felony in violation of NMSA 1978 § 30-9-11(G)(1) ("CSP (G)(1)").  The pertinent language of the CSP statutes is as follows:

> **30-9-11.  Criminal sexual penetration.**
> A.  Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.
> . . . .
> E.  Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated:
> > (1)  by the use of force or coercion on a child thirteen to eighteen years of age . . . .  Whoever commits criminal sexual penetration in the second degree when the victim is a child who is thirteen to eighteen years of age is guilty of a second degree felony for a sexual offense against a child . . . .
> . . . .
> G.  Criminal sexual penetration in the fourth degree consists of all criminal sexual penetration:
> > (1)  not defined in Subsections D through F of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child and not the spouse of that child . . . .

NMSA 1978 § 30-9-11(A), (E)(1), and (G)(1).

A jury trial was held. During his closing argument, the prosecutor stated that Petitioner's mistaken belief regarding K.E.'s age was not a defense to the crime of CSP because, even if the belief were sincerely held, 17 years old was still considered underage.  Memorandum Opinion [Doc. 11-1] at 65.  Petitioner's counsel did not object to that comment.  *Id.* at 66.  The jury was

---

[6]  New Mexico criminal statutes grade CSP from the first to the fourth degree, with each degree including distinct, aggravating elements.  *See* NMSA 1978 § 30-9-11(C)–(G).  This PF&RD refers to several types of CSP under New Mexico law.  Each type will be given a shorthand name of "CSP (*X*)," where the "*X*" corresponds to the subsection of NMSA 1978 § 30-9-11 where that form of CSP is codified.

then instructed on, *inter alia*, the counts of false imprisonment and CSP.  The jury instructions

regarding false imprisonment provided, in relevant part:

> **Instruction No. 9**.  If you should have a reasonable doubt as to whether the defendant committed the crime of Kidnapping, you must proceed to determine whether the defendant committed the included offense of False Imprisonment.

> **Instruction No. 10**.  For you to find the defendant guilty of False Imprisonment as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant restrained [K.E.] against her will;
> 2. The defendant knew that he had no authority to restrain [K.E.];
> 3. This happened in New Mexico on or about the 25th day of April, 2009.

Jury Instructions 9–10 [Doc. 11-2] at 36–37.

The jury instructions relating to the count of CSP (E)(1) (i.e., with force or coercion) and

the lesser included offense of CSP (G)(1) (i.e., without force or coercion) provided, in relevant

part:

> **Instruction No. 11**.  For you to find the defendant guilty of [CSP (E)(1)] as charged in Count 2, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant caused [K.E.] to engage in sexual intercourse;
> 2. *[K.E.] was at least 13 but less than 18 years old*;
> 3. The defendant *used physical force or physical violence*; OR *[K.E.] was unconscious, or asleep, or physically helpless*, or suffering from a mental condition so as to be incapable of understanding the nature or consequences of what the defendant was doing; AND the defendant knew or had reason to know of the condition of [K.E.];
> 4. This happened in New Mexico on or about the 25th day of April, 2009.

> **Instruction No. 12**.  If you should have a reasonable doubt as to whether the defendant committed the crime of [CSP (E)(1)], you

must proceed to determine whether the defendant committed the included offense of [CSP (G)(1)].

Instruction No. 13. For you to find the defendant guilty of [CSP (G)(1)], as charged in Count 2, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. The defendant caused [K.E.] to engage in sexual intercourse;
2. *[K.E.] was at least 13 but less than 16 years old*;
3. The defendant was 18 years old or older at the time of the offense;
4. The defendant is at least 4 years older than [K.E.];
5. *The defendant did not act under a mistake of fact*;
6. This happened in New Mexico no or about the 25th day of April, 2009.

Instruction No. 14. Evidence has been presented that the defendant believed that [K.E.] was 17 years old. The burden is on the state to prove beyond a reasonable doubt that the defendant did not act under an honest and reasonable belief in the existence of those facts. If you have a reasonable doubt as to whether the defendant's action resulted from a mistaken belief of those facts, you must find the defendant not guilty.

Jury Instructions 11–14 [Doc. 11-2] at 38–41 (emphases added). Thus, there were three

significant differences between the instructions for CSP (E)(1) and CSP (G)(1). First, the jury

instruction for CSP (E)(1) included the element of force or coercion, whereas the jury instruction

for CSP (G)(1) had no such requirement. Jury Instructions 11 and 13 [Doc. 11-2] at 38, 40.

Second, the jury instruction for CSP (E)(1) stated that the victim could be between 13 and

*18* years old, whereas the jury instruction for CSP (G)(1) stated that the victim had to be between

13 and *16* years old. Jury Instructions 11 and 13 [Doc. 11-2] at 38, 40. Finally, "mistake of

fact" regarding the victim's age was stated to be a defense to CSP (G)(1), but not to CSP (E)(1).

Jury Instructions 11 and 13 [Doc. 11-2] at 38, 40.

The jury did not find Petitioner guilty of kidnapping but convicted him on the lesser included offense of false imprisonment.  Amended Judgment and Sentence[;] Commitment to the Penitentiary [Doc. 11-1] ("Judgment") at 6.  As to the CSP count, the jury found Petitioner guilty of CSP (E)(1), *not* the lesser included offense of CSP (G)(1).  *Id.*  On December 13, 2010, Petitioner was sentenced to 15 years of incarceration, no less than five years of supervised parole upon release, and a requirement to register as a sex offender. *Id.* at 6−7.

Petitioner appealed his convictions to the Court of Appeals on December 13, 2010. Appeal From Twelfth Judicial District . . . [Doc. 11-1] at 18.  His docketing statement raised two claims that are relevant here: (1) that he was denied effective assistance of counsel when his trial attorney failed to object to the prosecutor's statement that Petitioner's mistake as to K.E.'s age was not a defense to CSP; and (2) that the crimes of CSP and false imprisonment merged, such that punishment for both offenses amounted to a violation of the prohibition against double jeopardy. *Id.* at 17.

On June 17, 2011, the Court of Appeals affirmed Petitioner's conviction.  Memorandum Opinion [Doc. 11-1] at 70.  In considering Petitioner's IAC claim, the Court of Appeals applied the two-pronged test set forth in *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.[7]  The Court of Appeals articulated the *Hester* test as follows: "the defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that the defendant was prejudiced by the deficient performance.  The burden of proof is on the

---

[7]  Although the Court of Appeals cited to *Hester*, 1999-NMSC-020, ¶ 9, for its IAC test, this test is taken directly from *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the controlling Supreme Court precedent on ineffective assistance of counsel.

defendant to prove both prongs." Memorandum Opinion [Doc. 11-1] at 66–67 (internal citation omitted).

Addressing only the second prong of the *Hester* test, the Court of Appeals determined that Petitioner had failed to make a prima facie showing of prejudice. *Id.* at 67. The Court of Appeals found that the jury was properly instructed as to the existence of a mistake-of-fact defense for CSP (G)(1). *Id.* However, the Court of Appeals went on to find that there was "abundant evidence, which the jury found credible, that [CSP (E)(1)] was committed with force and was not consensual." *Id.* at 67. Therefore, the alleged misstatement of law—which would have made a difference only if the jury had decided that the sex was consensual—was of no import. Accordingly, the Court of Appeals concluded that Petitioner had failed to demonstrate that, but for his attorney's failure to object to the alleged misstatement of law, there was a "reasonable probability that the result of the trial would have been different." *Id.* at 67.

As to his double jeopardy claim, Petitioner argued that convictions for both CSP and false imprisonment amounted to multiple punishments for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Defendant/Appellant's Memorandum in Opposition to Proposed Summary Affirmance [Doc. 11-1] at 35, 37. He argued that the convictions amounted to a double jeopardy violation because: (a) he did not restrict K.E.'s freedom of movement for any amount of time longer than it took for him to sexually assault her, such that the conduct underlying the two convictions was "unitary"; and (b) the state legislature did not intend to create separately punishable offenses for the two crimes. *See generally id.* at 35–46.

The Court of Appeals determined that there was no double jeopardy violation. Memorandum Opinion [Doc. 11-1] at 69.  In doing so, it applied the two-pronged standard for double jeopardy violations set forth in *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61.  Memorandum Opinion [Doc. 11-1] at 68.  Specifically, the Court of Appeals looked to "(1) whether the conduct [was] unitary, and (2) if so, whether the legislature intended to create separately punishable offenses based on the statutes." *Id.*  After noting that the standard required Petitioner to show *both* prongs in order to prevail on his double jeopardy claim, the Court of Appeals determined that Petitioner failed to show either.  *Id.* at 69–70.  As to the first prong, the Court of Appeals found that the conduct underlying false imprisonment and CSP (E)(1) had "sufficient indicia of distinctness" to show that the conduct was not unitary. *Id.* at 69.  As to the second prong, the Court of Appeals looked to the elements of the two offenses as described in the jury instructions and determined that the "elements of the two crimes . . . are vastly different and, as such, mak[e] them separate crimes serv[ing] different societal interests." *Id.*

Petitioner petitioned the New Mexico Supreme Court for a writ of certiorari on July 11, 2011, raising the two claims at issue here.  Petition for Writ of Certiorari . . . [Doc. 11-2] at 1, 2. The New Mexico Supreme Court summarily denied the petition on August 5, 2011.  Order [Doc. 11-2] at 17.  It then issued its mandate on September 8, 2011.  Mandate to District Court Clerk [Doc. 11-2] at 18.

Petitioner filed the present 28 U.S.C. § 2254 habeas Petition on June 13, 2012.  [Doc. 1] at 1.  Pursuant to this Court's Order, Petitioner withdrew two of his four claims as they were unexhausted.  Order Adopting Magistrate Judge's Proposed Findings and Recommended

Disposition [Doc. 22]; Certificate of Withdrawal [Doc. 23].  The Petition now comprises only two claims:

1.  That Petitioner was denied effective assistance of counsel due to his trial attorney's failure to object to the prosecutor's alleged misstatement of law during closing arguments.  Petition [Doc. 1] at 11–12; [Doc. 2] at 4, 9–10.  Specifically, the prosecutor stated that Petitioner's mistake of K.E.'s age as 17 years old was not a defense "because [17] is still under age."  Petition [Doc. 2] at 4.

2.  That Petitioner's convictions for both false imprisonment and CSP violate the prohibition against double jeopardy because Petitioner did not restrict the victim's freedom of movement for any amount of time longer than it took for him to sexually assault the victim.  Petition [Doc. 1] at 13–14; [Doc. 2] at 10–12.  Thus, argues Petitioner, the acts giving rise to the separate charges of false imprisonment and CSP (E)(1) constituted "unitary" conduct, such that convictions for both crimes resulted in multiple punishments for the same offense in violation of the prohibition against double jeopardy.  Petition [Doc. 2] at 10–12.

I now turn to these two remaining claims.

STANDARD FOR § 2254 HABEAS PETITIONS

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. [8]  A petition for habeas corpus under 28 U.S.C. § 2254 attacks the constitutionality of a state prisoner's conviction and

---

[8]  Because this Petition was filed after the effective date of the AEDPA, its standards apply to guide this Court's determinations. *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008).

continued detention.  The Court cannot grant habeas relief pursuant to § 2254(d) unless the decision in a petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id.* at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id.*  Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003).

Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.

Pursuant to AEDPA, state-court findings of fact are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  Therefore, an application for a writ of habeas corpus that challenges a finding of fact must be dismissed unless the petitioner can show by clear and convincing evidence that the determination was factually erroneous. *Id.*; *Wiggins v. Smith,* 539 U.S. 510, 528 (2003).

Finally, courts must construe a pro se litigant's pleadings liberally and hold them to a less stringent standard than is required of formal pleadings drafted by counsel. *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  This requires a court to "reasonably read the pleadings to state a valid claim on which the [pro se litigant] could prevail . . . despite the [pro se litigant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  "Nevertheless,

13

conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* Finally, a court "cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall*, 935 F.2d at 1110).

**DISCUSSION**

**I.      The AEDPA Standard of Deference Applies.**

At the outset, Plaintiff asserts that the AEDPA standard of deference should not be applied to the Court of Appeals' determination, "as [the determination] does not satisfy the standard of 28 U.S.C. § 2254(d)(1) or (2)." Response [Doc. 14] at 1 (emphases in original). This assertion is simply wrong. The AEDPA standard clearly applies to Petitioner's case because he filed his federal habeas Petition well after the AEDPA was enacted. *See Abdul-Kabir*, 550 U.S. at 246 (AEDPA standards control in a § 2254 habeas petition filed after the AEDPA's enactment date).

**II.     Petitioner's Ineffective Assistance of Counsel Claim**

Petitioner argues that his trial attorney was constitutionally ineffective when he failed to object to an alleged misstatement of available defenses made by the prosecutor during closing argument. Specifically, Petitioner argues that his case was prejudiced because his attorney did not object when the prosecutor stated that Petitioner's belief that K.E. was 17 was not a defense to the crime of CSP. Petitioner [Doc. 1] at 11–12; [Doc. 2] at 4, 9–10.

In evaluating a claim for ineffective assistance of counsel, a court must apply the two-pronged standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S.

14

668 (1984).  To prevail, a movant must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.  *Id.* at 687–88.  Both showings must be made to satisfy the *Strickland* standard.  *Id.* at 687.  To demonstrate prejudice, the movant must show that there is a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.  *Id.* at 694.  The court is not required to address both prongs of the *Strickland* standard if the movant makes an insufficient showing on one of the prongs.  *Id.* at 697; *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir. 2010).

Petitioner fails to show that the Court of Appeals unreasonably applied Supreme Court precedent when it determined that Petitioner suffered no prejudice as a result of the alleged misstatement of law made by the prosecutor during closing arguments.  Petitioner was convicted of CSP (E)(1), which applies when (a) force or coercion is used, and (b) the victim is between 13 and 18 years old.  Judgment [Doc. 11-1] at 6.  The mistake-of-fact defense, i.e., Petitioner's belief that the victim's age was 17 rather than 15, was not available to the charge of CSP (E)(1).  *See* Jury Instruction 11 [Doc. 11-2] at 38; *see also* Judgment [Doc. 11-1] at 6 (Petitioner found guilty of CSP (E)(1), *not* CSP (G)(1)).  Such a mistake of fact constitutes a defense against CSP (G)(1), which applies when the victim is between 13 and 16 years old.  *See* Jury Instructions 13 and 14 [Doc. 11-2] at 40–41.  In convicting Petitioner of CSP (E)(1), the jury necessarily found that Petitioner used force or coercion when he sexually assaulted K.E.  For purposes of CSP (E)(1), it made no difference whether K.E. was 15 or 17.  The important thing was that she was younger than 18.  Thus, the Court of Appeals properly determined that the prosecutor's

statement caused no prejudice—there was no reasonable probability that the result of the trial would have been different had defense counsel objected at the time the comment was made.  The mistake-of-fact defense simply did not apply to the offense of which Petitioner was convicted.

It was also reasonable for the Court of Appeals to end its IAC analysis at that point. Having determined that Petitioner failed to make a prima facie showing of prejudice under the second prong of the *Strickland* standard, the Court of Appeals was not required to analyze the unreasonable-performance prong. *See Strickland*, 466 U.S. at 687 ("Unless a [petitioner] can make both showings, it cannot be said that the conviction . . . resulted from [ineffective assistance of counsel].").  I find that the Court of Appeals did not unreasonably apply the *Strickland* IAC test in determining that Petitioner had failed to make a prima facie showing of prejudice as a result of defense counsel's failure to object to the prosecutor's alleged misstatement of law.[9]

### III.    Petitioner's Double Jeopardy Claim

Petitioner argues that he received multiple punishments for unitary conduct in violation of the Double Jeopardy Clause of the Fifth Amendment.  Specifically, Petitioner posits that he did not restrict his victim's freedom of movement for any time longer than it took for him to sexually assault her.  Petition [Doc. 1] at 13.  He argues, therefore, that his convictions for both false imprisonment and CSP (E)(1) violate the constitutional prohibition against double jeopardy.

---

[9]  Although the Court of Appeals used an IAC test from state caselaw, that test did not contradict binding Supreme Court law.  The Court of Appeals culled its two-pronged IAC test from *Hester*, 1999-NMSC-020, ¶ 9; that case, in turn, adopts the two-pronged IAC test directly from *Strickland*, 466 U.S. at 687.  *See Hester*, 1999-NMSC-020 ¶ 9.  Though the Court of Appeals did not cite to *Strickland*, it did identify and apply the governing legal principle from *Strickland. See Early*, 537 U.S. at 8 (it is unnecessary for the state court to cite to applicable Supreme Court cases as long as neither the reasoning nor the result of the state-court decision contradicts applicable precedent).

The Fifth Amendment's guarantee against double jeopardy "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  In the context of multiple punishments for the same underlying conduct, the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).  Under the traditional double jeopardy test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not.'" *United States v. Raymer,* 941 F.2d 1031, 1043–44 (10th Cir. 1991) (quoting *Blockburger,* 284 U.S. at 304).  The Supreme Court has further clarified that so long as each provision "requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States,* 420 U.S. 770, 785 n.17 (1975).

In determining whether a defendant's conduct constitutes a single offense or separate offenses for double jeopardy purposes, a federal court "defer[s] to the state court's interpretation of the relevant statutory provisions."  *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998) (citing *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993)).

The New Mexico Supreme Court has adopted a two-part test for determining legislative intent as to multiple punishments.  *Swafford v. State,* 112 N.M. 3, 13–15, 810 P.2d 1223, 1233–35 (1991).  First, the court must inquire as to "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes."  *Swafford*, 112 N.M. at 13, 810 P.2d at 1233.  Conduct is not unitary if there are sufficient "indicia of distinctness" to support the

conclusion that the conduct was separate and distinct for each offense.  *Swafford*, 112 N.M. at 13, 810 P.2d at 1233.  Indicia of distinctness exist if the two events are "sufficiently separated by either time or space," among other factors.  *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34. If the conduct is non-unitary, then multiple punishments would not constitute double jeopardy. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

In cases similar to Petitioner's, New Mexico state courts have held that the conduct underlying convictions of CSP and false imprisonment is not unitary where the sexual intercourse is preceded and followed by conduct amounting to false imprisonment.  *See, e.g., State v. Allen*, 2000-NMSC-002, ¶ 67, 128 N.M. 482, 994 P.2d 728 (noting that conduct would not be unitary if "the perpetrator forcibly abducted the victim before attempting sexual penetration or continued to use force or restraint after the sex act was completed"); *State v. Corneau*, 109 N.M. 81, 86–87, 781 P.2d 1159, 1164–65 (N.M. Ct. App. 1989) (holding that an instance of CSP is completed upon penetration during sexual intercourse, and that restraint that occurs during the instance of CSP constitutes the element of "force or coercion" for a CSP offense that required such element.  Any restraint upon the victim that both preceded and followed the CSP is therefore separate and distinct from restraint upon the victim during the CSP.).  Similarly, acts underlying CSP and false imprisonment are not unitary where they are made separable by transport of the victim.  *See, e.g., Allen*, 2000-NMSC-002, ¶ 68 (holding that there was sufficient evidence that kidnapping was factually distinct from CSP where "there was evidence from which the jury could find that Defendant restrained the victim when he drove away from her house toward a remote location" where he raped the victim); *State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990) (holding that conduct underlying crimes of

kidnapping and CSP was not unitary because the kidnapping was completed at the moment the defendant abducted the victim and the CSP did not occur until the defendant caused the victim to engage in sexual intercourse at a remote location, distinct from where the victim was abducted).

If the conduct is unitary, the court must then proceed to the second prong of the *Swafford* test, which "asks whether the legislature intended multiple punishments for unitary conduct." *Swafford*, 112 N.M. at 14, 810 P.2d. at 1234. Under the second prong, "[i]f the legislature expressly provides for multiple punishments," there is no double jeopardy violation and the inquiry ends. *Swafford*, 112 N.M. at 14, 810 P.2d. at 1234. If, however, there is no "clear expression of legislative intent," the court then applies the *Blockburger* test to the elements of each statutory provision. *Swafford*, 112 N.M. at 14, 810 P.2d. at 1234. "If [the *Blockburger*] test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d. at 1234.

When applying the *Blockburger* inquiry to offenses that may be charged in alternate ways, the court looks only to the elements of the statutes as instructed to the jury and disregards any inapplicable statutory elements. *State v. Armijo*, 2005-NMCA-010, ¶ 22, 136 N.M. 723, 104 P.3d 1114. If the *Blockburger* inquiry establishes that one statute is subsumed by the other, i.e., if all of the elements of that statute are included within the elements of the other statute, then the statutes are the same for double jeopardy purposes. *State v. Contreras*, 120 N.M. 486, 490, 903 P.2d 228, 232 (1995). If the *Blockburger* inquiry instead establishes that one statute contains an element that the other does not, then this creates a presumption that the legislature intended multiple punishments. *State v. Armendariz*, 2006-NMCA-152, ¶ 16, 140 N.M. 712, 148 P.3d

798. The presumption may be overcome by other indicia of legislative intent, such as whether there is a strong similarity in the social evils to be proscribed. *Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35. As to the social evils proscribed, "[t]he CSP statute is designed to prevent unwanted sexual violence while the false imprisonment statute is designed to prevent unlawful restraint of any sort." *Armendariz*, 2006-NMCA-152, ¶ 17 (internal quotation marks omitted) (alteration in original).

In a case similar to Petitioner's, the New Mexico Court of Appeals concluded that the elements of false imprisonment and CSP (F)[10] were different enough to create a presumption that the state legislature intended to punish both. *State v. Fielder*, 2005-NMCA-108, ¶ 30, 138 N.M. 244, 118 P.3d 752. Specifically, false imprisonment does not require sexual contact, and CSP (F) requires sexual contact perpetrated through force or coercion, such that the differences "give[] rise to a presumption that the legislature intended separate punishments." *Fielder*, 2005-NMCA-108, ¶ 30. The *Fielder* court then concluded that the legislature did indeed intend separate punishments, in part because the offenses address distinct "social evils." *Fielder*, 2005-NMCA-108, ¶ 31 (false imprisonment is a fourth-degree felony designed to prevent unlawful restraint of any sort, and CSP (F) is a third-degree felony designed to prevent "unwanted sexual violence").

Applying these principles to Petitioner's case, it is clear that the Court of Appeals did not apply a rule that contradicted governing legal principles. To the contrary, it correctly identified

---

[10] "CSP (F)" refers to NMSA 1978 §30-9-11(F), which, like CSP (E)(1), involves criminal sexual penetration by use of force or coercion. However CSP (E)(1) requires an additional aggravating element that CSP (F) does not, namely, that the victim must be between 13 and 18 years old. *Compare* NMSA 1978 § 30-9-11(E)(1), *with* NMSA 1978 § 30-9-11(F).

the controlling test from state caselaw, i.e., the *Swafford* test.[11]  Moreover, the *Swafford* test that

the Court of Appeals applied addresses whether the sentencing court prescribed greater

punishment than the legislature intended, as required by Supreme Court precedent.  *See*

*Missouri*, 459 U.S. at 366.

Nor was the Court of Appeals' application of the *Swafford* test to Petitioner's case an

unreasonable one.  The court analyzed both prongs of the *Swafford* test—although it was only

required to analyze one—and determined that Petitioner failed to show either.  First, the Court of

Appeals reasonably determined that the conduct underlying Petitioner's conviction was not

unitary.  It based its determination on the fact that Petitioner first met with K.E. in her front yard,

where he gave her some vodka to drink.  That location was sufficiently distinct from the location

where Petitioner eventually had forced or coerced sexual intercourse with K.E., i.e., at

Petitioner's house.  Moreover, the Court of Appeals also determined that the timing of the

conduct was sufficiently distinct.  Specifically, Petitioner restricted K.E.'s movements during

instances when he was not sexually assaulting her.  For instance, Petitioner hit K.E. to keep her

in his home at one point.  Memorandum Opinion [Doc. 11-1] at 69.  The Court of Appeals'

determination as to the first *Swafford* prong was neither erroneous nor incorrect, let alone

objectively unreasonable.  *See Lockyer*, 538 U.S. at 76 (the state court's application of law must

be objectively unreasonable if the reviewing federal court is to issue the writ of habeas corpus).

Petitioner relies on *State v. Pisio*, 119 N.M. 252, 889 P.2d 860 (N.M. Ct. App. 1995), for

the proposition that his conduct was unitary.  Petition [Doc. 2] at 12.  His reliance on that case is

---

[11]  Although the Court of Appeals cited to *DeGraff* for its double jeopardy test, *DeGraff* merely restates the test first enunciated in *Swafford*.  *DeGraff*, 2006-NMSC-011, ¶¶ 26–27, 31.  Thus, there is no doubt that the Court of Appeals applied the *Swafford* test in analyzing Plaintiff's IAC claim.

21

misplaced.  There, the court held that conduct underlying kidnapping, assault, criminal sexual contact, and CSP (E)(5)[12] was unitary where all the conduct occurred within the same five-*minute* period and shared the *same location*.  *Pisio*, 119 N.M. at 261, 889 P.2d at 869.  Here, in marked contrast, the Court of Appeals determined that the amount of time (five *hours*) and settings (from K.E.'s front yard to Petitioner's home) in which the two crimes occurred sufficiently separated them in time and space to make them non-unitary.  Memorandum Opinion [Doc. 11-1] at 69.  Based on the time and space differences, the underlying conduct here is more similar to what occurred in *State v. Kersey*, in which the New Mexico Supreme Court held that kidnapping and felony murder were distinct acts where the kidnapping took place two hours before and 60 miles away from murder.  *Kersey*, 120 N.M. 517, 523, 903 P.2d 828, 834 (1995).  Here, K.E. was transported from her home to Petitioner's, only after which did Petitioner have forced or coerced sexual intercourse with K.E.  Memorandum Opinion [Doc. 11-1] at 62–63.  That K.E. was transported from one location to another further supports the conclusion that the conduct was not unitary.  *See McGuire*, 110 N.M. at 309, 795 P.2d at 1001 (holding that because kidnapping was completed at the moment the defendant abducted the victim and the CSP did not occur until the defendant caused the victim to engage in sexual intercourse at a remote location, the kidnapping and CSP were not unitary).  The Court of Appeals' determination as to the first *Swafford* prong, therefore, was a reasonable application of controlling law.

Similarly, the Court of Appeals' determination as to the second *Swafford* prong was not objectively unreasonable.   The Court of Appeals compared the jury instructions for false

---

[12] "CSP (E)(5)" refers to NMSA 1978 § 30-9-11(E)(5), which, like CSP (E)(1), involves criminal sexual penetration by the use of force or coercion.  However, CSP (E)(5) has the additional element of requiring that the criminal sexual penetration occur during the commission of another felony.  Moreover, it omits the requirement that the victim be between 13 and 18 years old.  *Compare* NMSA 1978 § 30-9-11(E)(5), *with* NMSA 1978 § 30-9-11(E)(1).

imprisonment and CSP (E)(1) and held that "the elements of the two crimes . . . are vastly different and . . . mak[e] them separate crimes serv[ing] different societal interests." Memorandum Opinion [Doc. 11-1] at 69.  Applying the *Blockburger* test, the Court of Appeals found that the legislature intended separate punishments for the different offenses.  The Court of Appeals further found that the elements for each offense were not subsumed within the other under *Blockburger*, and then correctly proceeded to the question of whether the statutes addressed separate social evils.  *Id.* at 69–70.  The Court of Appeals ultimately found that the legislature intended separate punishments under the statutes because they address different societal interests.  *Id.*  Mindful of the deference to be granted to state-court decisions, *Pinholster*, 131 S. Ct. at 1398 (the AEDPA standard is "highly deferential"), I find that this determination was not unreasonable.  *See Fielder*, 2005-NMCA-108, ¶¶ 30−31 (elements of CSP (F) and false imprisonment were different enough to create a presumption that the state legislature intended multiple punishments); *see also Armendariz*, 2006-NMCA-152, ¶ 17 (the CSP statute and the false imprisonment statute address different social evils).  I therefore find that the Court of Appeals reasonably concluded that the New Mexico legislature intended multiple punishments for conduct underlying false imprisonment and CSP (E)(1).

## CONCLUSION

Based on the foregoing, I find that Petitioner has not met his burden of showing that the Court of Appeals' decisions as to his ineffective assistance of counsel claim and his double jeopardy claim were contrary to, or  unreasonably applied, clearly established federal law.

I therefore **RECOMMEND** that the Respondents' Motion to Dismiss [Doc. 12] be **GRANTED**.  I further **RECOMMEND** that the Petition [Doc. 1] be **DENIED** and that this case be **DISMISSED WITH PREJUDICE**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

24